Good morning. My name is Terry Ryan. I am the attorney representing Kelly Falcon in this matter. I have been representing Mr. Falcon since approximately October of 2005, prior to that time he had at first one attorney and then the Federal Defender's Office was appointed. They represented Mr. Falcon through trial and I was appointed after trial and before post-trial motions. This is a case where the defendant was charged with three counts and was found not guilty of counts two and three. He was found guilty of count one and the facts involved a nightclub which caught fire. It was investigated. The fire was put out. Mr. Falcon, being the person who was leasing the nightclub, became the prime suspect in the matter. It was investigated. A search warrant was served on a computer. The matter went through post-trial motions and trial and Mr. Falcon was convicted. Thereafter was sentenced to five years in prison where he remains at this time. I would like to talk to the court this morning about my issues on Appeal 358 and 10. The first issue, issue number three, is the issue regarding the computer search. The facts in this case indicate that Mr. Falcon had a computer in his residence which he used for both personal and business uses. And after the arson investigation was begun, the United States magistrate judge issued a search warrant to the investigators for the computer search. For the computer of the defendant. And in this case, it is my argument that the search team did not feel bound by the terms of the search warrant. The search team took the computer, took it to wherever they processed that type of evidence, made some copies of the hard drive, and then went through everything in the computer. So you're not challenging that there was probable cause with respect to the warrant. You're saying the scope on the execution exceeded. The scope of the search and the scope of the seizure exceeded the authority given by the officers. Now, as a practical matter, and we have cases that suggest that it's okay to seize the hard drive and then look at it, what – it seems to me there's two aspects here. You're suggesting that they can't take the hard drive and then look through everything. But if they don't do that, how is it, you think, that they can match up the scope to what they've seized? So that's one issue. And then the second issue is, well, if they go broader, then the question is, what can they do with the stuff that they find that they shouldn't have been looking at in the first place? So there's two questions I have for you. All right. I'm not suggesting that they can't seize the hard drive. Okay. As a practical matter, and I'm a practical guy, you can't do anything other than seize the entire hard drive. And I know that in, say, for example, Federal wiretap or telephone tap cases, Federal law mandates minimization. Now, there's no stop on the ATF investigators and the forensic people in looking through a hard drive. But there should be, and they should be policing themselves. Normally, we don't do should be. Do you have any authority that says that we are bound by some law that they can't do that? No. So you're just thinking that we should make a rule to that effect? I'm saying that this Court should find that if the search warrant says you can search for records pertaining to the Wild Horse Nightclub from July 2003 to the present date, then that's what the officers ought to be doing. And that's what the search warrant said. That's what they're able to look for. Well, but your complaint is, is your complaint primarily the pornographic materials that were seized? I mean, we can't really deal with it in the abstract. I hate to give anything up, but my complaint is that there may have been evidence, for example, evidence of his financial dealings with regard to the nightclub on the computer. Certainly, everybody here in this courtroom is going to say that's seizable material. Margo, what did they take that they – what did they seize that they shouldn't have? All the pornographic materials. Okay. That was my question. So that gets you into – Personal records. Okay. But the – Letters. The pornographic gets you into your issue number 5 having to do with Ms. Bresny, correct? That's true. Okay. So let's leave pornographic aside for just a minute, because was there any other use made of the seized pornographic materials other than the effort to try to impeach a witness with that photograph? Not that I'm aware of. So there's no – Again, all I know – There's no prejudice. Well, I wouldn't say that. Well, could you articulate the President prejudice? Pardon me? Could you articulate the prejudice? The prejudice to the defendant is that that material was used in court improperly by the government, by the prosecution. That has to do with the Ms. Bresny photograph. Okay. Well, maybe we should just stick to that. Well, there is some precedent in the Ninth Circuit, the Middleman case and the Chen case from back in, I think, 1999, which says that if the government goes in and seizes everything, and this is an abuse, this is a serious abuse of the process, that the court can throw out everything, not just what was not in the search warrant, but throw out everything. Yeah, but that fulcrum is on the word abuse. Where is the abuse here? The abuse here is that they took everything, and then they went into court and tried to discredit a witness using what the judge told them not to. Okay. See, that's the prosecutorial misconduct. That's different. So now we have – the judge says you can't use this pornographic stuff, correct? That's my understanding, yes. Okay. That's the way I read the order. And then they tried to show her this photograph, which the jury doesn't see, but she does. And as I understand it – Again, as I understand it also, I wasn't there. Right. Reading the record, and the records also set out in the governance brief, somehow the prosecution said this is not for the jury when they're using an electronic device which shows to the witness what the prosecution is using as evidence. He's got it on a screen. The witness sees it. The judge sees it, apparently, although I don't think the record shows that. And the witness is examined about that and asked not once but three times, is that you in this picture? And then was there any – there was no objection at that time? I believe there was. There was? I can't say for sure. Do you know or not know whether there was an objection? I do not know for sure. Doesn't that affect our standard of review? It does. If I can come back to the computer search for just a minute, because it's clear we're – and for good reason, moving on to the next issue. But before we leave the computer search issue, in your brief, when you are arguing issue three, the computer search, it's very clear that you contend that the pornographic materials were improperly searched for, improperly seized, and so on. An argument was made below that the search for computer terms, the research terms, such as arson, that that was not within the scope of the warrant. I don't see that argument in your briefs here. Am I right in not seeing it? Is it somewhere where I've missed it? The forensic expert apparently plugged in the word arson and then somehow – again, I'm not computer literate – but somehow went through the hard drive to find out whether that term had ever been the subject of a search. Correct. I understand that. And what I'm asking is, was looking for the search terms that he had used on the computer and finding that he had used arson as a search term shortly before the fire, was that within the scope of the warrant? That argument had been made below. I don't see it being made before us. Am I correct in saying there's not being – okay. So now let's go back to Ms. Bresny. Your understanding – this is obviously a little hard to reconstruct, but your understanding is the court said you can't use the pornographic pictures, correct? I can read. Okay. But then I'm looking at the transcript. This is what I'm trying to understand. I'm looking at the transcript, and Mr. Ahmed is showing this to the witness but saying this is not for the jury. And the court says yes. So the court's with him. And then he shows the photograph to her, and she says that's not her. That's a photograph, you know – no, those are photographs of me and someone else, she said. Is that of you and Mr. Falcon? And she says no. But during all that, two things are happening that kind of are perplexing to me. Nobody's objecting on behalf of Mr. Falcon, and somehow it seems that the judge is countenancing this, which seems at odds with what you've also quoted as the prohibition against use of the material. So maybe you can explain what you think is happening and where the prejudice is, because it is disturbing. When that happened, the judge was aware that the jury wasn't actually seeing the pictures. But the judge says later on, I believe, and it's in my brief, the judge says later on that the jury knew exactly what was going on. And so what is happening here is that the prosecution, without showing the picture to the jury, is letting the jury know that this woman who is on the stand is a sexual partner of the defendant, and they are taking digital photographs of themselves in sexual situations. Assuming that it's error, even plain error, could you talk about harmfulness or harmlessness? I mean, what consequence did that have on the jury's verdict? The jury is looking at the defendant throughout the trial, and they're wondering is this guy guilty or not guilty. They're being instructed that they have to determine the credibility of all the witnesses. The defendant did not take the stand. He did not testify in his own defense. So all the jury knows about this defendant at this point, without him having taken the stand, is that he likes to take digital pictures of himself, according to the prosecution's argument, in spite of the fact that the witness, Joy Breesney, said that's not him. So help me out as to, given the other evidence in the record, which suggests at least that he committed this arson, why is this piece of evidence, which I'm assuming for purposes of the question should not have been introduced and it was error to introduce it, you know, how likely is that to have affected the jury's verdict? Can you say anything more than you've already said? Subjectively is the only way I can answer that question. A jury, you know, is instructed that if the defendant doesn't take the stand, you're not to hold that instance. But they are constantly evaluating a defendant in a criminal case, although the judge is telling them not to. I'm sure that jurors are. And so when they hear that a fire started and the defendant was having financial problems with his nightclub, and they know, according to Judge Succo, that the defendant likes to take pornographic pictures of himself with a digital camera having sex with his former girlfriend, then that prejudices the defendant. That should not have been involved in this trial. And I say at that point, the court of appeals should say, this defendant didn't have a fair trial. Vacate and remand. Send it back and say leave the pictures out. That was error. Clear error. Okay. Okay. I guess we've gone over the argument regarding assignment of error number 3 and the But I want to reiterate regarding the testimony of Joy Breezny that Trial Judge Succo said that there not be any attempt to introduce anything that was on the computer that doesn't relate directly to the charge. In other words, that is not relevant to the case. And the prosecution just blatantly violated the court's ruling, which was in writing, and not in writing just once, but twice. Can you tell me what happened? Because I'm a little flawed on this. What happened with regard to the suppression motion and the pornographic materials and the motion? In other words, what did trial counsel actually do? Did trial counsel move to suppress the photos? Did he actually move to suppress the photos? And did the judge rule on that motion? It's unclear to me. My understanding is that trial counsel moved to suppress any evidence seized by way of the computer. Yeah, but I was talking specifically. I don't think he moved to suppress specifically that photo, though. And that then came up with the issue of the motion limiting it, I think. The defense counsel were both female, two of them. Yes. Oh, that's right. But was that brought up during their tenure or the prior counsel's tenure? I don't recall. I don't think the prior counsel was on the case very long. He added it to some arguments. Those co-counsel, did you know if they moved specifically? I couldn't tell that. But it was the subject of the motion limiting that this material could not be brought up without prior bringing it to the judge without the presence of the jury. Yes, I believe they did, and that was the ruling of the court. I think I found the ruling, although I guess the timing is a little unclear. All counsel and witnesses shall refrain from mentioning or referring to alleged pornography seized on the defendant's computer storage drive within the presence of the jury. Is that the ruling you're referencing? That's the ruling. And it went on to say that if you want to use it, see me first. You have to ask. Yes. But there's pornography in two points. There's the pornography general that he had. He was apparently pointing out. Yes. He had all this other stuff. But then there was this specific one about Ms. Bresny, and that's what became the issue because he brought the picture of Ms. Bresny and your client in this position and used it for impeachment. Right. And I thought that was impeachment as to Bresny's testimony in connection with the defendant. Doesn't that become irrelevant, and doesn't that go to harmlessness? I would think it would be relevant, except that if you show the jury then the picture, it becomes inflammatory. Well, excuse me. That's what I don't understand. I thought the picture was on the table in a – I thought it was a hard copy picture on the counsel table in an envelope. Am I wrong? I don't know. It wasn't there. Well, no. That's what I think the record said. Now, I may be wrong, but as I understand it, he was doing a classical impeachment. He had the picture in an envelope on the table, and he asked her these questions because she said she had no relationship about the picture. But I didn't think anybody saw it, and he never displayed it and never introduced it in evidence, I think. Well, I have a different take on it. My reading is that it was put on the electronic device, which I think they call the Elmo, which then picks up the picture and puts it on the screen for the witness, and the screen is away from the jury, and the screen is on the judge's bench also. Even so, you're just saying it was improper impeachment then, because this was during impeachment. Well, the judge told him that he couldn't use it for any purpose unless it came to him first. Secondly, the judge said later on the jury knew exactly what was going on because they were talking about digital cameras. Do you want to save the remaining time? We're giving it a minute and a half. Sure. Thank you. Good morning, Your Honors. My name is Tim Durkin. I'm an assistant U.S. attorney. I'm here on behalf of the U.S. Attorney's Office for the Eastern Federal District of Washington. Mr. Ahmed and I will be splitting our time. I will be taking issues 3 and 10, which are, as the Court heard the oral argument, primarily dealt with the scope of the search warrant as it relates to the prosecutorial misconduct and the interstate commerce instruction, which counsel did not address in the oral argument. So I think, at least with regard to my time, I can limit it to the issue as it relates to the prosecutorial misconduct. Will that include the use of the Bresney image? It is, Your Honor. Okay. Maybe we could just start there. You and Mr. Ahmed were co-counsel at trial. Is that right, from the record? That's correct, Your Honor. So we have the court ruling that says you can't mention or refer to the alleged pornography. And yet the question to Ms. Bresney is referring to the alleged pornography, is it not? On those straight facts, yes, Your Honor. And I think you need to put it in more of a context in which that order arose. And I think from that, the understanding of the government and then the context in which that specific piece of evidence was offered to Ms. Bresney as part of a bias issue. The court's original order was in response to a pretrial that was originally held on March 15th. At the time of that pretrial, the defendant, Mr. Falcon, was represented by Jeffrey Feiner. One of his boilerplate motions was the end recognizing that in the search of the computer, there was an initial search that was performed providing these key word index. And the key words brought up various information. One area of the computer that was not searched in that key word index, of course, was this massive dump of information that occurred the day following the fire on April 8th. That was searched later. However, what was clear during both searches was that there were thousands, literally thousands of pornographic websites and contacts with websites, both pay and non-pay pornographic websites. So the time of the hearing on March 15th was the government's understanding that the pornography, if we're going to use that in its legal sense, related to the non-pay websites. Now, the order, admittedly, is broad enough to certainly encompass if you are going to define the photographs, the intimate photographs between Ms. Bresny and Mr. Falcon as pornography. It is broad enough to encompass that. From the government's standpoint, also, it wasn't our intention to offer, and we did not offer, any evidence of pornographic websites throughout the course of the trial. In further support of the mutual understanding of counsel at the time of trial, that if we were talking about pornographic websites, is a reference in the record, Your Honor, to 1472. And it's a conference between, sidebar, between Ms. Hunt, who was representing Mr. Falcon at the time of trial, and Mr. Ahmed in front of the judge, and Ms. Hunt had an objection that she brought to the sidebar of the judge, and said, Your Honor, I think that Mr. Ahmed is now going to be getting into areas that were excluded, specifically in the record, the pornographic websites. Mr. Ahmed, it was not his intention to get into that area of the inquiry, but that was the specific reference the United States submit to you, that that was mutual understanding. Your argument is that a plausible reading of the order does not, in fact, include within the definition of pornography these pictures of the witness and the person who might have been or might or might not have been Falcon. She denies that it was Falcon, although the evidence is pretty strong that it probably was. But so you're saying, well, that's not necessarily within the definition of pornography as it was used in the order. That's the argument. That's part of the argument, Your Honor. I guess what I'm submitting to the Court is that – But if that's the argument, I don't know how far it gets you, because the reason the pornography is excluded is that it was beyond the scope of the warrant, right? No, absolutely not. There was no motion to suppress pornography. Was it within the scope of the warrant? It can't be. It could have been, depending on the warrant. No. It could have been, but if you had a different warrant, not on the warrant you had. Well, I guess respectfully, Your Honor, the United States would submit that at the time that the search warrant was issued, the person that was the focus of the investigation was obviously Kelly Falcon. However, during the continuing investigation of that matter, in the interviews with Ms. Bresnik, including her grand jury testimony, it became apparent that she was giving inconsistent information and she was providing an alibi. I think you're sliding off what my point is. You have a warrant. The warrant allowed you to search the computer. I see nothing in that warrant that allows you to search for pornographic websites. Am I wrong? Pornographic websites, absolutely correct. That is to say, it's limited to search of things like financial records related to the arson and so on. There's nothing in there that allows you to search for and then use pornography. Correct? Correct. As part of our case, yes. As I read the warrant, there's also nothing in there that allows you to search for and use pictures of naked people having sex, no matter who they are. You might find it relevant to the trial, but there's nothing in the warrant that allows you to search for it. Correct? I guess I wouldn't concede that entirely, Your Honor. Where in the warrant is there something that allows you to look for naked pictures of naked people having sex? It allows for business records and photographs. That doesn't sound like a business record. Let me continue. You put it in the context in which the relationship is. Mr. Falcon lives in Ms. Bresny's house rent-free. Yes, but give me the language in the warrant that gets you where you want to get. The plain language of the warrant, as the Court's pointing out, says records related to the charged crimes, arson, wire fraud, and use of a firearm. Well, maybe isn't the answer that the court itself said, this stuff isn't in the scope of the warrant. If you look at the supplemental excerpts of record in about 1891, 2, and 3, after they use the photograph with Ms. Bresny, then you're going to bring in some more people to kind of say, well, actually she must be lying because these photos were made on this timeframe and that sort of thing. And the judge says, it seems to me further impeachment on a collateral source. More importantly, it is apparent to me, based on at least what I currently know, that any documents that you received or got as a result of the search appear to be on the scope of the warrant. And then when they say, well, but it's important, or Mr. Ahmed says it's important because we have to show this relationship. And then the judge says that that document clearly used in questioning appears to be beyond the scope of any search warrant that was provided, so I'm not going to permit that kind of testimony. So didn't the judge himself say that it was beyond the scope of the warrant? He did. So now you disagree. It's a false fact. But you're disagreeing with the judge now? No. Well, he did. Yes? No? I'm saying that there is an argument that the United States is a bastion. And I'm, I guess, requesting a little bit or an opportunity to provide a little more context about Ms. Bresnik's relationship and how she became a person of interest in this case, and therefore the relationship that she had with Mr. Falcon. I don't question why you wanted to use the photograph. My question is whether you should have understood that the judge didn't want you to use it. The reason the judge didn't allow you to enter the order specifically with respect to pornography was beyond the scope of the warrant. And if this other picture of naked people having sex was pornography, you're covered. If it's not pornography, as you're trying to say, maybe it wasn't pornography within the meaning of the order, the underlying rationale for the order is just patent. So you should have been aware that this was improper to use and that you should have gone to the district judge beforehand. This just seems to me obvious. Why is the question? Why am I making a mistake? Your Honor, I think that's a rational interpretation. However, what I'm trying to provide to the Court is the context and the mutual understanding of the scope of that term, pornography. The scope of the term pornography. I think my sort of narrative or question incorporated that point. It did, Your Honor, except to say that when the motion was in front of the judge, it wasn't a motion to suppress pornography because it was beyond the scope of a warrant. It was a motion to suppress the website pornography that the parties realized there was an abundance of on the computer. Okay. I'm finished on that point. Okay. Thank you, Your Honor. And I guess the other aspect of it is it's offered to show that this was not an intentional violation. It was not a willful violation. The parties did have a reasonable understanding of what that term meant when the Court issued its order. And that's why I'm offering that in that context. And just to finish this off, this was used during the impeachment of Bresney, right? That's correct. During the prosecution. And at the time that the impeachment started and they went into it, was there any objections made at any time? There was no objection made. The judge never said anything. Counsel said nothing. But when it came up later, I think the judge didn't understand this had come out as part of the search warrant. So in the later discussion, the judge is saying, oh, so this is where this comes from. Well, in that case, it's clearly beyond the scope of the search warrant. So that's when I read you those excerpts, the judge is saying this is beyond the scope of the warrant. I mean, how many hundreds or thousands of pages were seized as a result of the hard drive being seized, do you recall? Specifically of the hard drive, I don't recall that there was a voluminous amount of material in terms of business and financial records that were seized. There were other loose records that were available that were seized. But so in terms of what was seized, would it be fair to say it was what we would think of as typical business records, some photographs, and then downloaded of what we refer to as the pornographic sites? Well, and also the search term is arson, and as well as leased with regard to Inquiry on the web. And then, correct, to occasions both shortly before the fire and shortly after. Yes. From a user at that account. Right. And then the additional evidence of the massive dump, the massive deletion off of the hard drive, which did include financial records. Thank you. If you assume and you find that this was a violation, the standard, of course, is plain error and the prejudice to the defendant. And the touchstone, of course, on the due process violation is not the culpability of the prosecutor, but it is whether or not this gentleman received a fair trial. And the United States admits that on the volume of evidence that was provided, this was over a two-week trial, there were 40, 45 witnesses that were called, numerous stipulations that were entered into the record before the judge and the jury, that the evidence, the untainted evidence, if you accept the argument that it's tainted, that cross-examination, which went on for less than four minutes, is my understanding, and it is reflected in the record. Can we talk about what happened? Because there seemed to be some discussion. Was it on the ELMO? Was it an envelope? What was the nature of the photo relative to the evidence that came in or the impeachment? I wasn't present in the courtroom at the time of this examination. What does the record show? The record shows, in my interpretation of the record, that shows that the witness was the ELMO was placed, the photograph was placed on the ELMO. It was requested that only the witness view that on her monitor. She saw it on the monitor, and Mr. Ahmed examined her. Did you have, do you have an intimate relationship with the defendant, Mr. Fowler? Did the jury? Is that a courtroom with jury monitors and then the jury monitors, which were turned off? Which were turned off during that period. Correct. The jurors did not see it. The court in a post-trial conclusion said it was a rather dramatic presentation. The photographs were in an envelope on top of the council table. They were handed to Mr. Ahmed. Mr. Ahmed, after the initial denial of an intimate relationship, offered that to demonstrate extrinsic evidence of bias and offered that to her. It's pretty hard to resist a district judge's conclusion that under those circumstances, even if the jury doesn't see the photograph, they know exactly what's going on. Yes. I'm not going to say that the jury had to speculate. The purpose of the cross-examination was to impeach her, so she was intimate. To establish a bias. And there's no mystery here. They didn't see the picture. Well, and, you know, knowing that there's a consensual. Kind of made it all the more. I'm sorry? Made it all the more interesting to not have it, in a way. It wasn't ballroom dancing. I mean, they. You did it because you wanted to show there was an intimacy. You were trying to impeach her character when she said she wasn't. And, in fact, Ms. Bresny had been the subject of two motions before trial to establish that she had a close association with the defendant, given her relationship, and those motions were denied by the Court. You have five minutes. I don't know if you want to go with more issues or you want to have Mr. Ahmed take some different issues. I just thought I would mention the timing is for you. If the Court has additional questions, I'd be happy to answer them. I think they've been adequately briefed. Unless you have some specific questions for Mr. Ahmed on the other issues, I'd be happy to defer my time. No, it appears not. Thank you. Thank you. Rebuttal? Did you want to speak? It was a little unclear. I thought he was sitting down for the government as a whole, but. You're just waiting for a list. My name is Zannie Ahmed. I'm an assistant United States attorney. I'm also from the Eastern District of Washington. There are some issues that I do want to clear up in response to the Court's questions. Since Mr. Norton was not in the courtroom at the time. I appreciate that. Your Honor, your question was, was it actually handed to the witness or did it remain on the table. Actually, it was placed on an Elmo and shown just to the witness and to the judge, and I believe it goes to the defense counsel as well. So that's how it occurred. I would not, Your Honor, concede the point that it was outside the scope of the search warrant. Actually, I would say. You're fighting with the judge, the district judge. I understand that. You might be fighting with us, too. I'm not sure of that, but you're also fighting, in my view, with what the warrant says. Well, Your Honor, the warrant actually says we're looking for evidence of arson. I know it's a general rule. That's not what the warrant says. Well, the warrant says that some of the things that they want to look at are photographs, business records, and so on. The photographs were covered. I don't really want to get into the text of the warrant, but you're always on dangerous territory when you summarize or paraphrase what's in the warrant, when the specific language of the warrant is narrow. This language is narrow, and you're fighting uphill with me to persuade me that pictures of naked people having sex, no matter what their identity is, is within the scope of that warrant. I understand, sir. Your Honor, one of the things, the way it was recovered was it was recovered through a mass deletion. Keith Bartlett found that on it. Irrespective of how it was recovered, you're fighting the warrant in its language in terms of my own conclusion on what the warrant says. And obviously, the district judge disagreed with you on this point. Yes. Then I'll move on to the other issue of fact that the defense counsel has raised as one of his issues. Agent Lance Hart did testify that based on the totality of the circumstances, he believed that the fire started at the last time that the building was occupied at 1242. But he specifically stated in his testimony and on cross-examination that the totality of the circumstances, including considering the interviews, the photographs, the burn patterns, and the operation of the motion sensors, and that's on SCR 744. So certainly, as an expert, someone who's qualified in investigating fires, he could make a statement as to that issue and as to an opinion of that based on his expert opinion and as to what he was qualified to say on that day. Now, you will notice that Lance Hart basically at the beginning was just asked very simple questions. Did you hear Norm Loftin testify yet? Did you dispute his opinion in any way? No, I didn't. So it was very limited as to what he said in his opinion, but certainly he had a basis for that. Are there no other questions by the Court? Thank you. Thank you. I think not. Thank you very much. The case of United States v. Falcon is submitted. The next case for argument this morning will be Phillip Morris v. King Mountain Thank you.
judges: Brunetti, McKeown, W. Fletcher